HARRELL, J.,
dissenting, which BARBERA, C.J., and ADKINS, J., join.
I dissent. Although I agree with the Majority opinion’s conclusion that there is no indication in the legislative history of H.B. 704 of 1987 that suggests explicitly that the Legislature intended to import broadly Brady and its progeny into the LEOBR by inclusion of a requirement that a charged officer be given pre-hearing by the department any exculpatory information (Maj. op. at 96-97, 89 A.3d at 1199-1200), I disagree with the Majority opinion’s absence of any appreciation that “exculpatory information” should include potential impeachment information regarding a departmental material witness to the alleged misconduct. The Majority opinion concludes that “the Legislature only intended to disclose information related to the officer and the charges specified rather than the disclosure of information regarding an alleged extraneous investigation of a witness, which did not relate to the officer and his or her specific charges involved in the hearing.” Id. Neither the language of H.B. 704, as enacted, nor the legislative history pointed to by the Majority opinion (Maj. op. at 94-95, 89 A.3d at 1198-99), supports the Majority’s conclusion. Moreover, to countenance the police department offering as one of its material witnesses an officer that, *98 at the time he was called to testify, was suspected by the department of being a distributor of illegal narcotics, and yet suppress that information, is 'wrong manifestly (even in an administrative proceeding).
Lieutenant Jones’s testimony before the Legislature on H.B. 704 (recounted in pertinent part by the Majority opinion at 94-95, 89 A.3d at 1198-99) used as an illustration of what concerned him about the original bill the example of an ongoing, parallel investigation of the charged officer that could be compromised by premature revelation. This does not bolster the Majority opinion’s view that the Legislature was concerned with divulging impeachment evidence of a departmental witness.
The legislative testimony of Sergeant Hoffman (Maj. op. at 94-95, 89 A.3d at 1198-99) was directed likewise to the unamended version of H.B. 704. The original bill excluded from disclosure “any information that is the subject of any other pending investigation which is irrelevant to the charges and specifications against the officer.” Maj. op. at 94 n. 26, 89 A.3d at 1198 n. 26. Even then, Sergeant Hoffman’s relevant concern about the original language was about “revealing information that may be to the detriment of ... other officers that may be involved____” Maj. op. at 95, 89 A.3d at 1198. That also is not the circumstance of the present case.
Thus, the change made in the proposed legislation, after hearing these testimonies, should be read in the light of the concerns expressed to the Legislature, none of which suggested that impeachment information regarding a departmental material witness in the trial board proceedings of the pertinent charges against Detective Ellsworth should be deemed excluded as “non-exculpatory information.”
I find it reprehensible that a police department may blind a trial board to the obvious credibility suspicions that would have arisen surely from the department producing a material witness (another police officer) that it has reason to suspect may be a drug dealer. Had Detective Redd been so discredited, the case against Detective Ellsworth could have come down essentially to a “he said/he said” contest between Detective Ellsworth and Sergeant Brickus. With the unsullied *99 “eyewitness” corroboration by Detective Redd of Sergeant Brickus’s version of what happened on 7 August 2009 at 2727 W. Garrison Avenue in Baltimore, the scales of the weight of the evidence tipped in the department’s favor. The proceedings, in my judgment, were flawed fatally.
I would hold that § 3-104(n)(l)(ii) of the Public Safety Article of the Maryland Code means that “exculpatory information” required to be disclosed includes potential impeachment information, known to the department, regarding a witness the department intends to call at the trial board proceedings. As that was not done in the present case and the implicated witness was a material eyewitness, Detective Ellsworth is entitled to a new trial board hearing. Accordingly, I would reverse the judgment of the Court of Special Appeals and remand the matter to that Court with directions to affirm the judgment of the Circuit Court for Baltimore City.
Chief Judge BARBERA and Judge ADKINS authorize me to state that they join in the views expressed in this opinion.